Virginia GRAY and Stuart Parker, individually and on behalf of all others similarly situated and Welfare Action Group Against Poverty, Inc., on its own behalf and in behalf of its members, and Forest Neighborhood Service Center on its own behalf and in behalf of its members, Plaintiffs,

v.

DEPARTMENT OF SOCIAL SERVICES OF THE STATE OF NEW YORK, George K. Wyman, as Commissioner of the Department of Social Services of the State of New York, and Governor Nelson A. Rockefeller as Chief Executor Officer of the State of New York, Defendants.

No. 69 Civ. 2584.

United States District Court
S. D. New York.

Aug. 14, 1969.

Harold R. Washington, New York City, Robert S. Asher, New York City, of counsel, Morrisania Legal Services, for plaintiffs,

Louis J. Lefkowitz, Atty. Gen. of State of New York, for defendants; Irving L. Rollins, Asst. Atty. Gen., of counsel.

## MEMORANDUM

BONSAL, District Judge.

Plaintiffs are two individuals who receive payments pursuant to the Aid to Families with Dependent Children (AFDC) of the Social Security Act, 42 U.S.C. §§ 601–610 (1964, Supp.IV 1965–68), and two voluntary, non-profit organizations composed mainly of AFDC recipients, the majority of whom as the individual plaintiffs, are Negro or Puerto Rican.

Plaintiffs seek a declaratory judgment and a preliminary injunction against the Department of Social Services of the State of New York (the Department), George K. Wyman, Commissioner of the Department, and Nelson A. Rockefeller, Governor of the State of New York.

Plaintiffs allege that the defendants have discriminated against Negroes and Puerto Ricans by not hiring Negroes and Puerto Ricans as "fair hearing" referees or to serve on Commissioner Wyman's staff (which they contend violates 42 U.S.C. §§ 1981, 1983, and 2000d), and that plaintiffs have been and will be prejudiced in the "fair hearings" which are held because of this discrimination.

At argument on plaintiff's application for a preliminary injunction, defendants moved orally to dismiss the action for failure to state a claim and for lack of jurisdiction.

Plaintiffs allege that they are prejudiced by the alleged discriminatory hiring practices of defendants because of the nature of the "fair hearing" process and the role of the "fair hearing" referees and of the Commissioner (and impliedly, the Commissioner's staff).

Under 42 U.S.C. § 602(a) (4),

"A State plan for aid and services to needy families with children must * * * provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for aid to families with dependent children is denied or is not acted upon with reasonable promptness."

Under section 139–a of the New York Social Services Law, McKinney's Consol. Laws, c. 55, if an application for aid is denied or postponed,

"the applicant may appeal to the department, which upon receipt of the appeal shall review the case, shall give the applicant making the appeal an opportunity for a fair hearing thereon and within thirty days render its decision."

The Regulations under the New York Social Services Law provide,

"[A] referee designated by the commissioner shall conduct the hearing. Such referee is hereby empowered to subpoena witnesses, administer oaths,

take testimony and compel the production of such books, papers, records and documents as may be relevant to the hearing.

\* \* \* \* \* \*

"The referee shall transmit his findings to the commissioner who shall render the department's decision in the case \* \* \*" (18 NYCRR 356.4(d) (2), (5).)

"Fair hearing" referees are Civil Service positions. According to an affidavit submitted by the Department, twelve vacancies for the position of referee (eight permanent and four temporary) opened up in 1967 and 1968. The Civil Service Department furnished a list of the 46 eligible candidates and after these had been canvassed by the Department only twenty indicated that they would accept a position. None of the twenty was Negro or Puerto Rican. No applicant for the temporary positions or the permanent positions was Negro or Puerto Rican.

The complaint alleges that Commissioner Wyman hires his own staff members, and it appears that these are not Civil Service positions.

Plaintiffs say that while 30% of the population of New York City and 90% of the AFDC recipients in New York City, are Negro or Puerto Rican, no "fair hearing" referee or Commissioner's staff member is Negro or Puerto Rican, and that this is *prima facie* proof of racial discrimination. The Department answers that no Negro or Puerto Rican has applied for these positions.

Plaintiffs do not allege that Negroes and Puerto Ricans have applied for positions as "fair hearing" referees or as members of Commissioner Wyman's staff and been turned down on account of race, nor do they allege any instances of racial discrimination by "fair hearing" referees or by Commissioner Wyman and his staff. An adverse decision is not of itself evidence of racial discrimination. There is merit to plaintiffs' argument that qualified Negroes and Puerto Ricans should be enlisted for these positions,

and in a news release issued July 2, 1969, Governor Rockefeller announced that the State was "broadening the means of entry [by members of minority groups] into State service and expanding the opportunities for training and advancement for those already employed by the State." However, absent specific instances of discrimination, plaintiffs' argument falls far short of raising a constitutional issue or a violation of the Civil Rights Acts. See Green Street Ass'n v. Daley, 250 F.Supp. 139, 146 (N.D.Ill.), aff'd, 373 F.2d 1 (7th Cir. 1967), cert. denied, 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed. 2d 995 (1968). Nor does it appear that plaintiffs have been denied "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens" (42 U.S.C. § 1981), or "of any rights, privileges, or immunities secured by the Constitution and laws." (42 U.S.C. § 1983).

There is no constitutional or statutory right to have members of one's own race proportionately represented in State agencies or commissions. See Finkelstein, The Application of Statistical Decision Theory to the Jury Discrimination Cases, 80 Harv.L.Rev. 338, 347–348 (1966). Neither plaintiffs nor the class they purport to represent are entitled to a hearing before a "fair hearing" referee of the same race or ethnic origin. See Collins v. Walker, 329 F.2d 100, at 105 (5 Cir.), aff'd on rehearing, 335 F.2d 417 (5th Cir.), cert. denied, 379 U.S. 901, 85 S.Ct. 189, 13 L.Ed.2d 175 (1964).

As to alleged shortcomings in the fair hearing proceedings, plaintiffs have failed to invoke any of the administrative remedies which section 2000d–1 provides, see 45 C.F.R. §§ 80.7–80.11 (Supp. 1964); cf. Cypress v. Newport News General & Nonsectarian Hospital Ass'n, 375 F.2d 648, 659 n. 20 (4th Cir. 1967).

Plaintiffs' application for a preliminary injunction is denied; defendants' motion to dismiss the complaint for failure to state a claim is granted.

Settle order on notice.