141 N.J. Super. 334 (1976)
358 A.2d 221
FAIR HOUSING COUNCIL, INC., A NON-PROFIT NEW JERSEY CORPORATION, LEONCIA PORTER AND MARTIN M. FRIEDMAN, CITIZENS AND TAXPAYERS OF THE STATE OF NEW JERSEY, AND STANLEY C. VAN NESS, PUBLIC ADVOCATE OF THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS AND CROSS-RESPONDENTS,
v.
NEW JERSEY REAL ESTATE COMMISSION, AN AGENCY OF THE STATE OF NEW JERSEY; AND THE STATE OF NEW JERSEY, ITS OFFICERS, AGENTS AND EMPLOYEES, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted April 13, 1976.
Decided May 6, 1976.
*336 Before Judges MATTHEWS, LORA and MORGAN.
Mr. Peter A. Buchsbaum, Assistant Deputy Public Advocate and Mr. Kevin Prongay, attorneys for appellants and cross-respondents.
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondents and cross-appellants (Mr. Stephen Skillman, Assistant Attorney General, of counsel, and Mr. Bertram P. Goltz, Jr., Deputy Attorney General, on the brief).
PER CURIAM.
Plaintiffs challenge the statutory requirement that five of the seven members of the defendant New Jersey Real Estate Commission must be licensed real estate brokers with at least ten years' experience. N.J.S.A. 45:15-5.[1] Fair Housing Council is a nonprofit corporation organized to seek and promote equal housing opportunities in Bergen County. Leoncia Porter and Martin M. Friedman are officers of the Fair Housing Council. The action is also brought by the Public Advocate.
Count 1 of the complaint alleges that the statutory restrictions for membership on the Commission improperly curtail plaintiffs' rights to be appointed to the Commission and to have their views as nonbrokers "become the prevailing philosophy of the Commission," thus violating equal protection of the law. Plaintiffs, in count 2, sue as members of the public who desire to have their interests fully represented *337 on the Commission and allege an inherent conflict of interest in "allowing industry representatives to set enforcement policies and priorities for that industry by obtaining a majority vote on the Commission which regulates it." It is their position that the restriction on nonindustry representation violates equal protection and constitutes an arbitrary delegation of public power to a private industry, in violation of plaintiffs' due process rights. Count 3 challenges the requirement that certain Commission members be licensed brokers and have ten years' experience, alleging that a smaller proportion of individuals of racial minority backgrounds possess the 10 years' experience as brokers than the proportion of minority group individuals in the general population, thus violating equal protection concepts.
The trial judge granted defendants' motion to dismiss for failure to state a claim on which relief can be granted as to counts 1 and 2 only. Plaintiffs' motion for leave to appeal the partial dismissal was granted, as was defendants' motion for leave to cross-appeal from the trial judge's refusal to dismiss as to count 3.
Plaintiffs contend that the trail judge erred in dismissing counts 1 and 2 and that the case is justiciable. They assert that the dismissal on the basis of the pleadings and the motion to dismiss is in contravention of Two Guys from Harrison, Inc. v. Furman, 32 N.J. 199 (1960). We disagree.
The remand for trial ordered in that case was obviously bottomed upon the doubts which even the majority of the Supreme Court entertained concerning the rationale of the merchandise classifications within the New Jersey Sunday Closing Law which proscribed the sale of certain goods on Sunday while permitting the sale of other goods. We do not construe Two Guys to require an evidentiary hearing whenever, as here, a constitutional challenge is directed toward a legislative enactment. In their brief in support of their motion for leave to appeal plaintiffs represented that they proposed to present at trial:
*338 Expert testimony by public administration specialists on the efficacy of self-regulation and an analysis of the effect of industry domination of the commission on its performance with regard to the promulgation of regulations protecting consumers, establishment of enforcement priorities, inducing racial minority entrance into the industry, public criticism of the industry, etc.
and the transcript of the argument before the trial court reveals that plaintiffs wanted "to develop a lot of strong discovery" concerning the statutory qualifications for appointment.
However, the only function of the trial judge was to determine whether, as a matter of law, there existed a "conceivable state of facts" supporting the regulatory system which the Legislature had chosen. Wilson v. Long Branch, 27 N.J. 360, 377 (1958); cert. den. 358 U.S. 873, 79 S.Ct. 113, 3 L.Ed.2d 104 (1958); Reingold v. Harper, 6 N.J. 182, 196 (1951). The judicial function is a limited one  to determine whether it is possible to conclude that the legislative decision is without rational basis. Stated in another way, one who attacks a legislative enactment must negate every conceivable basis which may reasonably support the legislative action. Jamouneau v. Harner, 16 N.J. 500, 515 (1954); cert. den. 349 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955); N.J. Restaurant Ass'n v. Holderman, 24 N.J. 295, 300-302 (1957); Indep. Electr., etc., Assn. v. N.J. Bd. of Exam'rs. etc., 48 N.J. 413 (1967).
It is settled that with respect to qualifications for office holding, the Legislature may prescribe qualifications which reasonably relate to the specialized demands of an office, whether that office be elective or appointive. Alongi v. Schatzman, 57 N.J. 564, 577 (1971); Kohler v. Barnes, 123 N.J. Super. 69, 83 (Law Div. 1973). But see, Humane Soc. of U.S. v. N.J. State Fish and Game, 129 N.J. Super. 239 (Ch. Div. 1974), certif. granted 69 N.J. 398 (1975), which held that the Legislature could not exclude from consideration for appointment to the Fish and Game Council an otherwise qualified person merely because he *339 is not a sportsman, farmer or commercial fisherman, as required by statute.
Plaintiffs' challenge to the wisdom of the statutory scheme would be more properly directed toward the Legislature. It is our considered opinion that the statutory requirement of having five licensed brokers, each with ten years' experience, as members of the Commission is rationally related to the specialized needs of the office, the duties of which, among other things, include the granting of licenses to real estate brokers and salesmen, suspending or revoking licenses, and promulgating necessary rules and regulations consistent with the licensing provisions of the statute. The trial judge held, and we agree, that the Legislature could reasonably have concluded that these functions could be more properly executed by persons experienced in the field being regulated.
The record reveals there was no genuine issue as to any material facts since, when counsel for plaintiffs at oral argument below indicated that the facts they intended to show dealt with the effect of the real estate industry on people and why it is an industry of intense public importance, defendants stated they conceded such facts. The testimony which plaintiffs now allege they would proffer at a hearing, and which we have set forth above, constitute arguments which are for the consideration of the Legislature, our function being the limited one to determine whether any conceivable set of facts rationally supports the legislative scheme, Reingold v. Harper, supra 6 N.J. at 196.
Plaintiffs in count 3 of the complaint allege that the requirements for eligibility to serve on defendant Commission, while facially neutral, severely restrict the possibility of racial minorities to be considered for appointment since very few minority persons meet the qualifications imposed. The trial judge was of the view that if the practical effect of a classification is to exclude blacks and other minority groups, an equal protection problem is raised, and he therefore determined that plaintiffs be given an opportunity to *340 prove their allegations. In their argument below plaintiffs relied in part on Turner v. Fouche, 396 U.S. 346, 362-363, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970) in which the Supreme Court held that a Georgia requirement that school board members be freeholders violated the Equal Protection Clause of the 14th Amendment in that the classification was wholly irrelevant to the achievement of a valid state objective. Here, however, the trial judge found, as do we, that the classification (ten years' experience as a licensed broker) was rationally related to the valid regulatory scheme.
Reference is made to Carter v. Greene County, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970), a companion case to Turner v. Fouche, supra, which involved an equal protection challenge to the racial composition of an all-white jury commission whose duty it was to select potential jurors. The Court refused to conclude that the absence of blacks from the jury commission in and of itself amounted to a prima facie showing of discriminatory exclusion. The court held that the appellants were no more entitled to proportional representation by race on the jury commission than on any particular grand or petit jury. See also, Gray v. Dept. of Social Services of N.Y., 305 F. Supp. 435 (S.D.N.Y. 1969), to the effect that there is no constitutional or statutory right to have members of one's own race proportionately represented on state agencies or commissions.
It is our conclusion that the trial judge erred in refusing to dismiss count 3 of the complaint in view of his finding, with which we agree, that the classification was reasonably related to the achievement of valid regulatory objectives. The fact that the classification may incidentally exclude a disproportionate number of persons of minority backgrounds is legally irrelevant.
The order of partial dismissal and the decision of the Chancery Division to dismiss counts 1 and 2 of the complaint are affirmed and the decision of the Chancery Division refusing to dismiss count 3 of the complaint is reversed.
NOTES
[1] In 1971 the Legislature amended the Real Estate Brokers and Salesmen Act as well as other licensing statutes to include two additional members, one designated from a closely related department in the Executive Branch of the State Government and the other from the general public. N.J.S.A. 45:1-2.2.