JERRY LADEN, PROSECUTOR, v. BERT DALY, EDWARD GRIFFIN, LEWIS BAUMULLER, JOHN BAUER AND JOHN MULHERN, CONSTITUTING THE BOARD OF PENSION COMMISSIONERS OF THE CITY OF BAY-ONNE, AND BOARD OF PENSION COMMISSIONERS OF THE CITY OF BAYONNE, RESPONDENTS.

Argued January 16, 1945—Decided January 31, 1945.

Before Justices CASE, BODINE and PORTER.

For the prosecutor, *Alfred Brenner.*

For the respondents, *Charles E. McCraith, Jr.,* and *Stephen F. Sladowski.*

The opinion of the court was delivered by

CASE, J. The writ of *certiorari* brings up the record of the Board of Pension Commissioners of the City of Bayonne

with respect to the application of Jerry Laden, a policeman, for retirement and pension.

Under date of May 11th, 1944, Laden, prosecutor herein, addressed a letter to the board asking for the privilege of retiring from active duty and stating that "physical disabilities render me unable to perform the duties required in my capacity of patrolman." The letter did not so state, but the intention was to allege a permanent disability. The board had held its May meeting on May 10th, 1944. Its next meeting was on June 30th, 1944, and at that meeting there was placed before it (1) prosecutor's letter of May 11th, (2) a letter written to Mayor Daly (Director of Public Safety and also a member of the Board of Pension Commissioners) at the latter's instance by Dr. Magner, police surgeon, and (3) a letter from Dr. McCarthy written in prosecutor's behalf and presumably at his request. Dr. McCarthy's letter was a brief communication of six lines; Dr. Magner's was longer and went into more detail. Both tended to support prosecutor's assertion of disability. But none of the communications were sworn to and none of the writers—not even the prosecutor— was present. Indeed, Dr. Magner had died three days earlier. The board passed a motion that "the application be received and no action taken." Prosecutor contends that the action should have been to grant the application and that the failure to grant was illegal.

The statute (R. S. 43:16–2) is not precise in all of its directions; but it does clearly state that the board shall call to its assistance the aid of the police surgeon and that the president is authorized to administer oaths to the physicians or others. It was within the province of the board to require formality of proof, even to require the personal attendance of witnesses and the administration of the oath to them. It was entitled, if it desired, not only to an oral examination of the witnesses but to an opportunity for investigation of the claimant's case. The very recent death of the police surgeon and the consequent inability to question him or to require his attendance and the absence of the applicant and of anyone in his behalf were enough to justify, if not to make inevitable, the refusal to take official action at its meeting on June 30th.

There is no proof that the board was then negligent in its attention to the exigencies of prosecutor's application which on that day, for the first time, came to its official attention; and the presumption is to the contrary. We find no substance in the argument that it was the statutory duty of the board, on that day, to take official action granting retirement to prosecutor on pension. Prosecutor has endeavored to bolster the quantity and quality of the proof by depositions taken since the writ was allowed. But the medical testimony so taken was not before the board and may not properly be considered in determining whether the board, on the case presented to it, should have granted the pension. We find no error of act or omission on the part of the board on June 30th.

The board would have been bound ultimately to determine, by resolution, whether the applicant was entitled. The statute so requires. The motion as carried was not such a determination. If the prosecutor was entitled to any relief by way of prerogative writ at that stage and upon that issue, it would have been by way of writ of *mandamus* to compel a decision. But that procedure was not followed. A few days later, on July 6th, prosecutor requested that he be accorded a hearing. His request was at once acknowledged, and he was informed that he would be advised of the next meeting of the board. It was not the practice of the board to have, and it did not have, a meeting during July or August. The next meeting was held on September 1st at which time counsel for prosecutor attended. He requested, and was granted, a postponement upon the ground that prosecutor was unable to be present. The case came to a finality at a meeting on September 29th from which prosecutor was again absent and at which his attorney rested his case upon the application as made and the statements on file. The board then resolved that "the application of Patrolman Jerry Laden for retirement be denied as he had not complied with the statutes."

On July 1st the statute of May 23d, 1944—chapter 253, *Pamph. L.* 1944—became effective. Under the provisions of that amendment a policeman with less than five years honorable service to his record who sought pension for permanent

disability must needs have incurred the disability in the actual performance of duty. There was and is no proof that prosecutor incurred his disability in the performance of duty; the plain inference is that he did not so incur it. Therefore, if the 1944 statute applies to the determination of September 29th, prosecutor clearly was not entitled. It is said on his behalf that he sustained a permanent disability before June 30th, 1944, and that consequently he became vested with a right to retirement under the then existing statute which, he contends, was not subject to alteration against him by subsequent legislative action. That contention is contrary to the ruling law in this state. The incidents of the pension fund are not such as to constitute a contractual or vested right between the employee and the state; and the employee has no rights except those based upon and within the pertinent statute, *Bennett* v. *Lee,* 104 *N. J. L.* 453; *Plunkett* v. *Board of Pension Commissioners,* 113 *Id.* 230; *affirmed,* 114 *Id.* 273; *Bader* v. *Crone,* 116 *Id.* 329; and the controlling statute, as was held in *Salley* v. *Firemen's and Policemen's Pension Fund Commission,* 124 *Id.* 79, is that which is effective concerning complainant's rights at the time an official act subject to the control thereof is due to be taken. In the last cited case the claimant had been awarded, on September 25th, 1933, retirement on a pension of $1,500 per annum payable $125 per month. The pension installments were duly paid until discontinued as hereinafter mentioned. On November 26th, 1935, the claimant was indicted on a criminal charge of first degree murder to which he later, June 1st, 1936, pleaded *non vult* and upon which he was forthwith sentenced to life imprisonment. On May 25th, 1938, a statute was enacted, chapter 221, *Pamph. L.* 1938, effective immediately, which prohibited the payment of a pension to any person for the period during which he was confined in a penal institution as a result of conviction of a crime involving moral turpitude. The pension payments were then discontinued. An action was brought for their collection. The trial court granted judgment for the full amount of the accumulated and unpaid pension installments. This court in reversing the judgment of the trial court said:

"The language of this statute is plain and leaves no room for doubt as to the intention of the legislature. It does not limit its terms to crimes committed or confinement in penal institutions commenced after the act took effect, nor does it limit its terms to pensions to be awarded after the act took effect. The gist of the statute is payment, and the mandate of the legislature is clear that no payment of such pension shall be made during confinement; and it further is clear that the person so confined loses all right to so much pension as he would receive or be entitled to receive had he not been confined."

If, after the preliminary incidents to a pension have transpired and the person has applied for and been granted retirement and pension for life in full accord with the existing law, the pensioner may be deprived of his pension by a law thereafter passed and for reasons that did not exist—and would not have been a barrier if they had existed—at the time of the granting of the pension, then, clearly, it is competent for the legislature to change, before a pension is granted, the conditions upon which it may be allowed. In our opinion the Salley decision is squarely against prosecutor's argument and, combined with the decisions, *supra,* which preceded it, is controlling.

If the posture of affairs had been such, on June 30th, 1944, that the pension commission ought then and there to have granted the application, and did not grant it, and the case had come to us for review with a record such that judgment for the prosecutor could have been directed thereon, a different issue would have been presented; but we have found that such a situation did not exist and that the commission did not err in abstaining, on June 30th, from dispositive action favorable to prosecutor. From July 1st forward the new statute was in effect and under it prosecutor was not entitled to retirement or pension. This leads to the conclusion that the action of the board on September 29th denying the application was without legal error.

The action appealed from will be affirmed, with costs.