JOHN E. PALAGONIA, INDIVIDUALLY AND AS EXECUTOR
OF THE ESTATE OF MARY PALAGONIA, PLAINTIFF,
v. CITY OF NEWARK AND EMPLOYEES' RETIREMENT
SYSTEM OF THE CITY OF NEWARK, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided June 1, 1976.

Messrs. *Cohen & Meshulam* (*Mr. Albert L. Cohen*, appearing), attorneys for plaintiff.

*Mr. Jonathan Kohn*, attorney for defendant City of Newark.

*Mr. Louis S. Cohen*, attorney for defendant Employees' Retirement System of the City of Newark.

KIMMELMAN, J. S. C. Plaintiff is the widower of a former Newark city employee and claims widower's benefits under the Employees' Retirement System of Newark. Plaintiff's wife was an employee of defendant City of Newark for 37 years and was a member of defendant Employees' Retirement System. She contributed $11,289.50 to the Retirement Fund and that amount was matched on her behalf in contributions by her employer, City of Newark. Upon the death of his wife plaintiff applied to the Employees' Retirement System for widower's benefits pursuant to *N. J. S. A.* 43:13–22.20. His application was denied. This litigation followed.

*N. J. S. A.* 43:13–22.20 provides:

Subject to the other provisions of this act, upon and after the death of such employee or pensioner, said retirement pension shall be paid to the surviving widow, so long as she remains unmarried; surviving dependent widower, as herein defined, so long as he remains unmarried; * * * provided, however, that in no instance shall a pension payment to such widow, dependent widower * * * exceed $3,000 per annum.

*N. J. S. A.* 43:13–22.3 defines a widower as:

* * * the surviving spouse of a city employee married to such employee for a period of at least 5 years prior to the retirement or

death of such employee * * * provided, however, that no pension shall be paid to the surviving husband of a deceased employee unless he shall be and continue to remain dependent upon the income which such employee was receiving at the time of her death or unless he shall be and shall continue to remain physically or mentally incapable of pursuing a gainful occupation. * * * The pension commission shall determine the question of the dependency of the surviving husband * * * as well as the ability of the surviving husband to pursue some gainful occupation.

Plaintiff widower challenges the distinction made between widows and widowers by these sections and claims that this classification violates the Equal Protection Clause of the Fourteenth Amendment in that a widower is required to prove dependency in order to qualify for benefits while a widow qualifies automatically solely because of her sex.[1]

The Equal Protection Clause of the Fourteenth Amendment has traditionally been applied according to two separate standards of judicial review, the "rational basis" test and the "strict scrutiny" test. While a statute has a strong presumption of constitutionality. *McGowan v. Maryland,* 366 *U. S.* 420, 425, 81 *S. Ct.* 1101, 6 *L. Ed.* 2d 393 (1961), nevertheless it will be struck down as violative of equal protection if it is arbitrary, irrational or improperly discriminatory. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *F. S. Royster Guano Co. v. Virginia,* 253 *U. S.* 412, 415, 40 *S. Ct.* 560, 561, 64 *L. Ed.* 2d 989 (1920). However, "statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

---

[1] Counsel have not argued that the determination of the question of "dependency" by the pension commission without adequate legislative standards prescribed in *N. J. S. A.* 43:13–22.3 constitutes an unlawful delegation of legislative power rendering the quoted section void. *See Siccardi v. State,* 59 *N. J.* 545 (1971) ; *Ward v. Scott,* 11 *N. J.* 117, 123 (1952).

*McGowan v. Maryland, supra* 366 *U. S.* at 426, 81 *S. Ct.* at 1105.

While under the "rational basis" test "a legislative classification must be sustained unless it is 'patently arbitrary' and bears no rational relationship to a legitimate governmental interest," *Frontiero v. Richardson,* 411 *U. S.* 677, 683, 93 *S. Ct.* 1764, 1768, 36 *L. Ed.* 2d 583 (1973), and the burden is on the opponent of the statutory scheme to show that no reasonable relationship to a valid state objective exists, *Dandridge v. Williams,* 397 *U. S.* 471, 90 *S. Ct.* 1153, 25 *L. Ed.* 2d 491 (1970), *McGowan v. Maryland, supra,* under the "strict scrutiny" test the burden shifts. *Shapiro v. Thompson,* 394 *U. S.* 618, 634, 89 *S. Ct.* 1322, 22 *L. Ed.* 2d 600 (1969). Here, the state must show that a "compelling state interest" exists for the challenged statute. The "strict scrutiny" test is applied rather than the "rational basis" test when the classification involved is itself considered "suspect". *San Antonio Indep. School Dist. v. Rodriguez,* 411 *U. S.* 1, 17, 93 *S. Ct.* 1278, 36 *L. Ed.* 2d 16 (1973). "Suspect" classifications currently include race, nationality and alienage. *Frontiero v. Richardson, supra* 411 *U. S.* at 688, 93 *S. Ct.* 1764. To the present time, in no case has *a majority* of the United States Supreme Court held that sex is a "suspect" classification, although federal decisions appear pointed in that direction.

Recently, three Supreme Court cases have shown an inclination to move the classification of sex into the suspect category. In *Reed v. Reed,* 404 *U. S.* 71, 92 *S. Ct.* 251, 30 *L. Ed.* 2d 225 (1971), a mother filed a petition in Probate Court in Idaho to be appointed administratrix of her son's estate. The father then filed a competing petition to have himself appointed administrator. The Idaho Code § 15–314 provided that "[o]f several persons claiming and equally entitled to administer, males must be preferred to females * * *." The Probate Court ordered that the letters of administration be issued to the father. Chief Justice Burger, writing for a unanimous court, held that the subject pro-

vision of the Idaho Code was unconstitutional as violative of the Equal Protection Clause because it provided dissimilar treatment for men and women who are similarly situated. The argument of the state was that the challenged provision reduced the workloads on probate courts by eliminating one class of contests. The court found that this claim was not without some legitimacy, but reasoned that to give a mandatory preference to members of one sex over members of the other merely to accomplish the elimination of hearings on the merits was to make the very kind of arbitrary legislative choice forbidden by the Equal Protection Clause.

Next, the Supreme Court decided *Frontiero v. Richardson, supra.* In this case *a plurality* of the Court held that classifications based upon sex, like classifications based upon race, alienage or national origin, are inherently suspect and must be subjected to strict judicial scrutiny. The matter arose when a married female Air Force officer and her husband brought suit against the Secretary of Defense for increased benefits for the husband as a "dependent" under 37 *U. S. C.* §§ 401, 403 and 10 *U. S. C. A.* §§ 1072, 1076. Pursuant to these statutes a serviceman could claim his wife as a "dependent" without regard to whether she was in fact dependent on him for any part of her support, while a servicewoman could not claim her husband as a "dependent" under the statutes unless he was in fact dependent upon her for over one-half of his support. The Supreme Court held that

> \* \* \* by according differential treatment to male and female members of the uniformed services for the sole purpose of achieving administrative convenience, the challenged statutes violate the Due Process Clause of the Fifth Amendment insofar as they require a female member to prove the dependency of her husband. [411 *U. S.* at 690–691, 93 *S. Ct.* at 1772]

The court first discussed *Reed, supra,* and stated that it found there implicit support for holding sex to be a suspect clas-

sification and subject to close judicial scrutiny. It implied that it had in *Reed* made a "departure from 'traditional' rational-basis analysis with respect to sex-based classifications." 411 *U. S.* at 684, 93 *S. Ct.* at 1769.

Moreover, since sex, like race and national origin, is an immutable characteristic determined solely by the accident of birth, the imposition of special disabilities upon the members of a particular sex because of their sex would seem to violate the basic concept of our system that legal burdens should bear some relationship to individual responsibility . . . . * * * And what differentiates sex from such non-suspect statuses as intelligence or physical disability, and aligns it with the recognized suspect criteria, is that the sex characteristic frequently bears no relation to ability to perform or contribute to society. [*Id.* at 686, 93 *S. Ct.* at 1770]

As to a showing of a compelling state interest, the government conceded that the differential treatment accorded men and women was for administrative convenience.

In essence, the Government maintains that, as an empirical matter, wives in our society frequently are dependent upon their husbands, while husbands rarely are dependent upon their wives. Thus, the Government argues that Congress might reasonably have concluded that it would be both cheaper and easier simply conclusively to presume that wives of male members are financially dependent upon their husbands, while burdening female members with the task of establishing dependency in fact. [*Id.* at 688-689, 93 *S. Ct.* at 1771]

Rejecting the administrative convenience test the court concluded by saying:

In any case, our prior decisions make clear that, although efficacious administration of governmental programs is not without some importance, 'the Constitution recognizes higher values than speed and efficiency.' * * * And when we enter the realm of 'strict judicial scrutiny,' there can be no doubt that 'administrative convenience' is not a shibboleth, the mere recitation of which dictates constitutionality. [*Id.* at 690, 93 *S. Ct.* at 1772]

Most recently, the Supreme Court decided the case of *Weinberger v. Wiesenfeld,* 420 *U. S.* 636, 95 *S. Ct.* v225, 43 *L. Ed.* 2d 514 (1975). In that matter a surviving husband and

father brought suit against the Secretary of Health, Education and Welfare claiming that the gender-based distinction in the Social Security Act, 42 *U. S. C.* § 402(g) was violative of equal protection since it unjustifiably discriminated against female wage earners required to pay Social Security taxes by affording them less protection for their survivors than was provided for male wage earners. The act provided that social security benefits based on the earnings of a deceased husband and father covered by the act were payable, with some limitations, both to the widow and to the couple's minor children. Social Security benefits based on the earnings of a deceased wife and mother covered by the act, however, were payable only to the minor children and not to the surviving widower. A three-judge District Court for the District of New Jersey granted summary judgment for plaintiff. It held that the different treatment of men and women mandated by § 402(g) violated the Equal Protection Clause. It held further that sex was an "inherently suspect" classification and thus subject to "close judicial scrutiny." *Wiesenfeld v. Secretary of Health, Education and Welfare,* 367 *F. Supp.* 981, 990–91 (1973).

The Supreme Court in *Wiesenfeld,* affirming the three-judge District Court, relied upon the decision in *Frontiero, supra,* and held that the gender-based distinction before it was indistinguishable from the one invalidated in *Frontiero.* It ruled that while

* * * the notion that men are more like than women to be the primary supporters of their spouses and children is not entirely without empirical support. * * * But a gender-based generalization cannot suffice to justify the denigration of the efforts of women who do work and whose earnings contribute significantly to their families' support.

Section 402(g) clearly operates, as did the statutes invalidated by our judgment in *Frontiero,* to deprive women of protection for their families which men receive as a result of their employment. * * * Since the Constitution forbids the gender-based differentiation premised upon assumptions as to dependency made in the statutes before us in *Frontiero,* the Constitution also forbids the gender-based differentiation that results in the efforts of female workers required to pay social security taxes producing less protection for their fami-

lies than is produced by the efforts of men. [420 *U. S.* at 645, 95 *S. Ct.* at 1231]

In *Silbowitz v. Secretary of Health, Education and Welfare,* 397 *F. Supp.* 862 (S. D. Fla. 1975); *Jablon v. Secretary of Health, Education and Welfare,* 399 *F. Supp.* 118 (D. Md. 1975), and *Coffin v. Secretary of Health, Education and Welfare,* 400 *F. Supp.* 953 (D. C. 1975), all currently on appeal to the Supreme Court, federal courts struck down as unconstitutional provisions of the Social Security Act, 42 *U. S. C.* § 402, which required a husband seeking benefits on account of his wife's Social Security contributions to show that he received at least one-half of his support from her while a wife was entitled to benefits on account of her husband's Social Security contributions without the need to show support. Although these courts shied away from application of the "strict scrutiny" test, they rejected the administrative convenience argument advanced by the Government and its claim that a severe strain would be placed on the Social Security system, and made it clear that Social Security benefits purchased by women should be of no less value to their spouses than those purchased by men.

All of the above cases are instructive and persuasive guides for this court. Therefore, it appears that the gender-based distinction in *N. J. S. A.* 43:13–22.20 and *N. J. S. A.* 43:13–22.3 which automatically assumes wives to be dependent and husbands not dependent must fall. That distinction reflects a cherished and romantic sentiment from an earlier era that women should be dutiful housewives enjoying their destiny as wives and mothers. This notion is an outdated stereotype of the respective sex roles and is no longer in harmony with the lifestyle of a large and growing segment of our population. It is illogical and inconsistent when application is made for statutory insurance benefits purchased through payroll deductions to require different standards according to which spouse survives.

The defendants claim that invalidation of the dependency distinction between widows and widowers will disrupt the actuarial soundness of the pension fund. That claim is rejected. Undoubtedly, the Employees' Retirement System has been funded by contributions calculated to bear a reasonably close relationship to the statutory level of benefits payable. No reliable statistics have been presented to the court to show whether the amount of future benefits payable will have to be reduced or the contributions increased to cover the anticipated claims by non-dependent widowers. Fear of inadequate financial resources, sound or fanciful, must nevertheless yield to the paramountcy of the constitutional rights here involved. *Cf. Robinson v. Cahill*, 67 *N. J.* 333 (1975). Or as the court said in *Silbowitz, supra* at 867, "The conservation of fiscal resources cannot be accomplished 'by drawing invidious classifications.' "

■ ■ Accordingly, this court holds that legislative classifications based upon sex are inherently suspect and subject to strict judicial scrutiny. Defendants have shown no countervailing equity or policy consideration of sufficient compulsion to outweigh the very basic proposition that a female wage earner has a constitutional right to expect that her earnings will produce the identical benefits for her family as do the earnings of a man. Since defendants have failed in that burden, those sections of the statute requiring proof of a widower's dependency shall be ordered excised and defendants enjoined from applying the balance of the statute except in conformity with this opinion.[2]

---

[2]It should be noted that the Public Employees' Retirement System of New Jersey (PERS), *N. J. S. A.* 43:15A-6 *et seq.*, covering most public employees, draws no distinction between widows and widowers. Other earlier enacted pension systems covering various categories of public employees do draw such a distinction. Since such legislation has not been challenged here, no attempt has been made to catalog the same.