147 N.J. Super. 168 (1976)
370 A.2d 902
ADAM REISER, PLAINTIFF,
v.
PENSION COMMISSION OF THE EMPLOYEES RETIREMENT SYSTEM OF THE COUNTY OF PASSAIC AND BOARD OF CHOSEN FREE-HOLDERS OF THE COUNTY OF PASSAIC, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided December 7, 1976.
*174 Mr. Edward H. Saltzman for plaintiff (Mr. Michael D. Mopsick on the brief).
Mr. Allan J. Breslow for defendants (Mr. Martin Verp, Esq., Passaic County Counsel, attorney).
MARTIN, J.S.C.
This case comes before this court by way of an action in lieu of prerogative writs. The facts, having been stipulated, will be stated in a summary manner. The plaintiff retired from his position as a county detective in 1975 at the age of 68, after having served continuously as an employee of Passaic County for 33 years. He was first married in 1938 but his first wife died in 1962. Prior to retiring in 1968, he remarried after he was 50 years old to a woman who was 15 years his junior. Plaintiff was *175 advised by defendant Pension Commission that his second wife, in the event of his death during the period of his retirement, would not be eligible to receive widow's benefits as provided for under N.J.S.A. 43:10-19 et seq., or under N.J.S.A. 43:10-18.50 et seq. Therefore, plaintiff has brought this action demanding a declaratory judgment that plaintiff is entitled to benefits pursuant to N.J.S.A. 43:10-26, or in the alternative, declaratory judgment that N.J.S.A. 43:10-18.50 et seq., insofar as said provisions operate to deprive the plaintiff of benefits otherwise accruing to him pursuant to N.J.S.A. 43:10-26, are violative of the due process and equal protection clauses of the United States and New Jersey Constitutions.
Plaintiff has raised four issues which this court must consider in rendering its judgment. First, does the enactment of N.J.S.A. 43:10-18.50 et seq. operate to deprive the plaintiff of benefits he would otherwise receive upon retirement under the terms of N.J.S.A. 43:10-19 et seq. Second, assuming that N.J.S.A. 43:10-18.50 et seq. does apply to plaintiff, is it discriminatory and violative of the equal protection provisions of the New Jersey and United States Constitutions to the extent that it denies benefits to plaintiff's widow, because she is more than 15 years younger than the plaintiff and married him when he was over the age of 50 years. Third, is N.J.S.A. 43:10-18.50 et seq. discriminatory and violative of plaintiff's equal protection rights in that it infringes on his fundamental right to marry. Fourth, is N.J.S.A. 43:10-18.50 et seq. violative of plaintiff's due process rights in that it denies to plaintiff and his wife vested property rights without due process of law by withholding from plaintiff's widow benefits she would otherwise receive under N.J.S.A. 43:10-19 et seq.
Plaintiff contends that his widow is entitled to those benefits provided under N.J.S.A. 43:10-19 et seq., while the State contends that the provisions of N.J.S.A. 43:10-18.50 et seq. should apply to plaintiff so as to deny his widow the right to receive pension benefits. Plaintiff argues *176 that the enactment of N.J.S.A. 43:10-18.50 et seq. can be interpreted as not operating to deprive him of the benefits granted by N.J.S.A. 43:10-19 et seq. but as providing additional benefits supplemental to those provided by N.J.S.A. 43:10-19 et seq.
Plaintiff's counsel in his brief makes reference to several New Jersey cases which state that pension funds are to be liberally construed to effectuate their remedial intent and that such construction should resolve all reasonable doubts in favor of the applicability of the statute to the particular case. Kochen v. Consolidated Police and Firemen's Pension Fund Comm'n, 71 N.J. Super. 463 (App. Div. 1962); Hillman v. Board of Trustees, Public Employees' Retire. Sys., 109 N.J. Super. 449 (App. Div. 1970); In Re Vaccaro, 131 N.J. Super. 264 (App. Div. 1974), aff'd 66 N.J. 151 (1974). However, in Alexander Hamilton Hotel Corp. v. Board of Review, 127 N.J.L. 184 (Sup. Ct. 1941), the court stated that a liberal construction of a statute does not connote a disregard of the plain meaning of the language employed to express the legislative objective. Lynch v. Edgewater, 8 N.J. 279 (1951); Fedi v. Ryan, 118 N.J.L. 516 (Sup. Ct. 1937); Bartholf v. Board of Review, 36 N.J. Super. 349 (App. Div. 1955). Belfer v. Borrella, 6 N.J. Super. 557 (Law Div. 1949), aff'd 9 N.J. Super. 287 (App. Div. 1950), hold that courts must regard statutes as meaning what they say and avoid giving them any construction which would distort their meaning. Courts have no legislative authority and should not construe statutes any more broadly or give them any greater effect than their language requires. Matthews v. Irvington Bd. of Ed., 31 N.J. Super. 292 (App. Div. 1954); Mountain Lakes Bd. of Ed. v. Maas, 56 N.J. Super. 245 (App. Div. 1959), aff'd 31 N.J. 537 (1960). The specifications of who shall benefit by the terms of a statute and under what conditions is a legislative function. The court should not construe the statute to enlarge the benefited class. Lynch v. Edgewater, supra; Marino v. Zdanowica, 66 N.J. Super. 512 (Law *177 Div. 1961). A statute must be considered according to what appears to have been the intention of the Legislature. When statutes relating to the same subject matter are repugnant or inconsistent, and the latter statute is clearly intended to prescribe the only rule which should govern the case, it will be construed as repealing the earlier act. Montclair v. Stanoyevich, 6 N.J. 479 (1951); West Orange v. Jordan Corp., 52 N.J. Super. 533 (Cty. Ct. 1958). This court will interpret the statutes in controversy in light of these applicable canons of construction.
N.J.S.A. 43:10-26, which provides pension benefits under the county detectives retirement system to a widow upon the death of her husband after retirement, uses the term "widow" in its generic sense with no further restrictions and, therefore, would provide benefits to the plaintiff's widow. However, N.J.S.A. 43:10-18.50, relating to definitions as used in the act (43:10-18.50 to 43:10-18.75), and N.J.S.A. 43:10-18.64(h), dealing with the eligibility of widows or widowers, both define widow as
* * * the surviving spouse of a county employee who married such employee prior to the time when such employee reached the age of 50 years. No such surviving spouse shall be eligible for any benefit hereunder who was or shall be more than 15 years younger than the employee at the time of their marriage, if such marriage occurs hereafter while the employee is a member of this retirement system.
This restricted definition of widow for the state pension plan would exclude the plaintiff's wife from the benefits provided therein since plaintiff was over the age of 50 years at the time he married a woman more than 15 years younger.
There appears to be no question that N.J.S.A. 43:10-18.50 et seq. has, in fact, superseded N.J.S.A. 43:10-19 et seq. and, if applied, will deny benefits to plaintiff's wife. Noted above, N.J.S.A. 43:10-19, there is a cross reference which reads: "County detectives retirement system superseded, counties of 300,000 to 325,000 see § 43:10-18.56." *178 N.J.S.A. 43:10-18.56, which is entitled "Other county retirement system superseded; transfer of moneys and assets," states that
It is the intention of this act (43:10-18.50 to 43:10-18.75) that the retirement system herein provided for shall * * * supersede and take the place of any county retirement system which shall be in operation in such county under and by virtue of the Revised Statutes, as follows: County detectives in counties of the * * * second [class] * * * and that such other county retirement systems shall be merged into and become part of the retirement system herein provided for and which shall be construed to be a continuation of such other county retirement systems.
N.J.S.A. 43:10-18.55 states that the members of the retirement system created by the act (N.J.S.A. 43:10-18.50 to 43:10-18.75) should include "all employees who, at the time of the adoption and approval of this act, are members of any of the following retirement systems in effect in said county: County detectives in counties of the * * * second class."
It is clear, that the legislative intent of this act (43:10-18.50 to 43:10-18.75) was to supersede the existing statute, N.J.S.A. 43:10-19 et seq., with reference to retirement funds for counties with a population of 300,000 to 325,000 people. Passaic County fell within those guidelines at the time of the enactment of this statute. Plaintiff makes reference to several amendments made to N.J.S.A. 43:10-19, county detectives retirement system, after the enactment of N.J.S.A. 43:10-18.50 et seq., thereby indicating the continued viability of the system. This legislative treatment is due to the fact that the county detectives retirement system has been superseded only in part and is still in effect today for those counties which do not fit within the numerical reference.
N.J.S.A. 43:10-18.58a(a) states what benefits a widow is to receive under the state pension fund and that these benefits are "subject, however to any other limitations of the act to which this act is amendatory and supplementary". *179 Being amendatory and supplementary, this section uses the term "widow" as defined in N.J.S.A. 43:10-18.50 which would deprive the plaintiff's wife of any widow's benefits since the plaintiff was over 50 years of age when he married his present wife who was 15 years his junior. If a word in a statute is given a statutory definition, that definition is controlling. Hudson Cty. National Bank v. Provident Inst., 80 N.J. Super. 339 (Ch. Div. 1963), aff'd 44 N.J. 282 (1965); Eagle Truck Transport, Inc. v. Board of Review, 29 N.J. 280 (1959); State v. Young, 95 N.J. Super. 535 (Cty. Ct. 1967). Plaintiff's second contention is that the statute is discriminatory and violative of his equal protection rights. The alleged discrimination is based on the fact that only county detectives in counties whose population is over 800,000 or between 300,000 and 325,000 are members of state pension plans which place the restriction on the class of widows who can qualify for pension benefits, while similarly situated county detectives in other counties are still under the county detective retirement system where the limitation does not exist.
At the outset it should be noted that for an act to be declared unconstitutional its repugnancy to the Constitution must leave no room for reasonable doubt. Brunetti v. New Milford, 68 N.J. 576 (1975); Gangemi v. Berry, 25 N.J. 1 (1957). There being a strong presumption that a statute is constitutional, plaintiff bears a heavy burden in his attempt to disprove the presumed validity of the pension act. Harvey v. Essex Cty. Bd. of Freeholders, 30 N.J. 381 (1959); Yellow Cab Co. of Camden v. State, 126 N.J. Super. 81 (App. Div. 1973); Blair v. Erie Lackawanna Ry. Co., 124 N.J. Super. 162 (Law Div. 1973).
The Equal Protection Clause secures equality of right by forbidding arbitrary discrimination between persons similarly situated. Schmidt v. Newark Bd. of Adj., 9 N.J. 405 (1952); Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed. 2d 436 (1968); Two Guys from Harrison, Inc. v. Furman, 58 N.J. Super. 313 (Law Div. 1959). However, *180 equal protection does not require that every person be dealt with identically, and it does not demand immediate logical tidiness or abstract symmetry. If the classification has some "reasonable basis", it does not offend the constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. In the area of social welfare, equal protection is not violated merely because the classification made is imperfect. The problems of government are practical ones and may justify rough accommodations. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61; 31 S.Ct. 337; 55 L.Ed. 369 (1911); Metropolis Theatre Co. v. City of Chicago, 228 U.S. 61, 33 S.Ct. 441; 57 L.Ed. 730 (1913); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153; 25 L.Ed.2d 491 (1970); Exum v. Marrow, 112 N.J. Super. 570 (Law Div. 1970).
Nor is equal protection violated because the legislation as enacted does not bring about the full reform or result intended to be produced. Equal protection does not require that a state choose between attacking every aspect of a problem or not attacking the problem at all. A law need not in every aspect be logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction and that the particular legislative measure adopted was a rational way to correct it. In an area of many competing pressures, the Constitution is satisfied if the Legislature, in responding to what it conceived to be a problem calling for regulation, did not disregard reason in drawing its lines. All that is required is that the State's action be rationally based and free from invidious discrimination. The Legislature is presumed to have acted within its constitutional powers, despite the fact that in practice its laws result in some inequality. N.J. Chapter, Am. I.P. v. New Jersey Bd. of Prof. Planners, 48 N.J. 581 (1967); Raybestos-Manhattan, Inc. v. Glaser, 144 N.J. Super. 152 (Ch. Div. 1976); Dandridge v. Williams, supra; Lindsley v. Natural Carbonic Gas Co., supra; Williamson v. Lee Optical *181 of Oklahoma, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).
As will be discussed, the act under review does not interfere with a "fundamental right" which would mandate application of a strict scrutiny standard of judicial review. San Antonio Independent School Dist. v. Rodriquez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Therefore, under the less demanding "rational basis" test the classification will be presumed valid if there is any conceivable state of facts which would afford reasonable support for it. Fair Housing Council, Inc. v. N.J. Real Estate Comm'n, 141 N.J. Super. 334 (App. Div. 1976); Palagonia v. Newark, 142 N.J. Super. 363 (Ch. Div. 1976); Wurtzel v. Falcey, 69 N.J. 401 (1976); Dandridge v. Williams, supra; Mc Gowan v. Maryland, 336 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).
The test of whether a statute denies equal protection of the law is set out in Snedeker v. Board of Review. Div. of Employ. Security, 139 N.J. Super. 394, 403 (App. Div. 1976): "a statute ... does not violate due process or equal protection so long as the classification or discriminatory treatment effected thereby has some reasonable basis, is fairly related to a legitimate public purpose, and may be justified upon any state of facts reasonably conceived." State in Interest of K.V.N., 116 N.J. Super. 580 (App. Div. 1971) aff'd 60 N.J. 517 (1972); Dandridge v. Williams, supra; Mc Gowan v. State of Maryland, supra; Kotch v. Bd. of River Port Pilot Comm'rs, 330 U.S. 552, 67 S.Ct. 910, 91 L.Ed. 1093 (1947). The test is similar under both the New Jersey and United States Constitutions. Borland v. Bayonne Hospital, 122 N.J. Super. 387 (Ch. Div. 1973), aff'd 136 N.J. Super. 60 (1975); Raybestos-Manhattan, Inc. v. Glaser, supra; Hudson Circle Servicenter, Inc. v. Kearny, 70 N.J. 289 (1976).
Thus, this review of the state pension plan must be limited to a determination as to whether all persons within a class reasonably selected are treated alike and whether the *182 classification involved rests upon some ground of difference having a real and substantial relation to the basic objective of the particular enactment or to some relevant consideration of public policy. Therefore, the employees protected by the pension fund statute must be readily distinguishable from those excluded from its ambit and they must be distinguished by characteristics sufficiently marked and important to make them a class by themselves. Washington Nat'l Ins. Co. v. Board of Review, 1 N.J. 545 (1949); Wilson v. Long Branch, 27 N.J. 360 (1958); Harvey v. Essex Bd. of Freeholders, supra; Raybestos-Manhattan, Inc. v. Glaser, supra. The legislation must apply equally to all those forming the statutory class, and that class must embrace all those in like situations and circumstances who are, therefore, natural members of the class. Koons v. Atlantic City Bd. of Comm'rs, 134 N.J.L. 329 (Sup. Ct. 1946), aff'd 135 N.J.L. 204 (E. & A. 1946).
In determining whether a classification is reasonably related to the basic objective of the legislation or to some relevant consideration of public policy, the court must consider the facts and circumstances behind the law, the interests which the State claims to be protecting, and the interests of those who are disadvantaged by the classification. Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); Skinner v. State of Oklahoma ex rel. Williamson, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). As the court stated in Glover v. Simmons Co., 17 N.J. 313, 319 (1955), "the motive which led to the enactment of the statute is one of the most certain means of establishing its own true sense." State ex rel. Richman v. Sperry & Hutchinson Co., 23 N.J. 38 (1956); Maplewood Tp. v. Essex Cty. Bd. of Taxation, 39 N.J. Super. 202 (App. Div. 1956).
For the statute to be declared unconstitutional the classification must be illusory in that it is not based on substantial distinctions and does not relate towards fostering *183 the purpose of the legislation or some relevant public policy, but excludes from the provisions of the pension plan employees who logically should have been included. Such a classification, having no rational basis, would thereby be lacking in the necessary freedom from artificiality and arbitrariness. Koons v. Atlantic City Bd. of Comm'rs and Washington Nat'l Ins. Co. v. Board of Review, supra. As the court stated in Kerr v. Kerr, 129 N.J. Super. 291, 294 (App. Div. 1974), "no equal protection difficulty arises unless it is demonstrated that a difference in treatment is upon grounds wholly irrelevant to achievement of a lawful objective by the State."
In applying the Equal Protection Clause to social and economic legislation, the court must give great latitude to the Legislature in making classifications. Passaic v. Consolidated Police, etc. Pension Fund Comm'n, 18 N.J. 137 (1955); Levy v. Louisiana, supra; Williamson v. Lee Optical, supra; Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957); Glona v. Amer. Guarantee & Liab. Ins. Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968). This court may not question the wisdom of the statute and impose on the Legislature its views of wise economic and social policy. Policy decisions are the exclusive responsibility of the Legislature, and the question of whether the statute is equitable and prudent is a matter to be decided exclusively by it. Intractable economic, social and philosophical problems presented by employee pension programs are not the business of this court, and it will not second guess the State Legislature which is charged with the difficult responsibility of allocating limited pension funds among a myriad of potential recipients. Cf. Thomas v. Kingsley, 43 N.J. 524 (1965); Dandridge v. Williams, supra; Helvering v. Davis, 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307 (1937); Charles C. Steward Mach. Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937).
In applying the foregoing principles of constitutional law to the state pension plan, this court must first ascertain *184 the factual situation surrounding the enactment of this statute to properly frame the equal protection question presented. The New Jersey Legislature has classified the counties within the State into six classes, based on their population. According to the 1942 Manual of the Legislature of New Jersey, at page 590, the classification was as follows: first class, counties with a population in excess of 600,000  Essex and Hudson; second class, counties with a population from 200,000 to 600,000  Bergen, Union, Passaic, Camden and Middlesex; third class, counties with a population from 50,000 to 200,000  Mercer, Morris, Burlington, Gloucester, Cumberland, Somerset and Warren; fourth class, counties with a population less than 50,000  Salem, Hunterdon and Sussex; fifth class, counties bordering on the Atlantic Ocean with a population exceeding 50,000  Monmouth and Atlantic; sixth class, counties bordering on the Atlantic Ocean with a population not exceeding 50,000  Ocean and Cape May. This classification system is often used by the Legislature to denote which counties will receive the benefits of or be subject to various legislative enactments.
Prior to 1943 the county detectives in all counties of the first, second, third and fifth classes were members of the county detectives retirement system, pursuant to N.J.S.A. 43:10-19 et seq. In 1943, however, the Legislature enacted N.J.S.A. 43:10-18.1 et seq., which superseded N.J.S.A. 43:10-19 et seq. in part by creating a state pension system for county detectives and certain other county employees in counties with a population of over 800,000. According to the 1942 Manual of the Legislature of New Jersey, the New Jersey Census Table, at pages 651-663 shows that only one county  Essex  had a population over 800,000 in 1943. The Legislature ignored the county classification by population which it had established in 1942 and, in effect, created a "seventh class county"  with a population in excess of 800,000  exclusively for Essex County. Again, in 1949, the Legislature enacted N.J.S.A. 43:10-18.50 et seq., which *185 superseded N.J.S.A. 43:10-19 et seq. in part by creating a state pension plan for county detectives and certain other county employees in counties with a population between 300,000 to 325,000. According to the 1942 Manual of the Legislature of New Jersey, the New Jersey Census Table, at pages 651-663, shows that only one county  Passaic  had a population between 300,000 and 325,000 in 1949. Again the Legislature ignored the county classification by population it had established in 1942 and, in effect, created an "eighth class county"  with a population between 300,000 and 325,000  exclusively for Passaic County.
Thus, as of 1949 the pension programs of county detectives are as follows: the county detectives retirement plan is still in effect for counties of the first class with populations under 800,000 but over 600,000, second class counties with populations over 325,000 but under 600,000, second class counties with populations under 300,000 and over 200,000, all third class counties and fifth class counties; the state pension act, which includes county detectives, is presently in effect for Essex County with a population over 800,000 and for Passaic County with a population between 300,000 and 325,000; fourth and sixth class counties apparently come under the provisions of N.J.S.A. 43:8B-1 et seq.
The constitutional question presented is: Were there any distinctive problems or circumstances existing in Essex County in 1943 and in Passaic County in 1949 which would justify and provide a reasonable and rational basis for creating a state pension plan for county detectives of only these two counties, which plan places additional restrictions on the class of widows who can qualify for benefits under the plan as compared to apparently similarly situated county detectives in other counties whose widows are not subject to these restrictions under the county pension act.
Plaintiff initially notes that the various pension plans provided for the judiciary, assistant county prosecutors, officers in penal institutions and county clerks do not utilize this restrictive definition of widow. However, such *186 a showing does not speak to the present issue. Equal protection only forbids discrimination between persons similarily situated or in similar circumstances. The employees covered by these pension plans perform diverse functions for the county, unrelated to those provided by county detectives and they have varying terms, conditions and benefits of employment. Therefore, the fact that the Legislature has seen fit to grant more liberal widow's benefits to these employees has no bearing on the constitutionality of the statute in question.
Plaintiff states that the restrictive definition of "widow" in N.J.S.A. 43:10-18.50 et seq. is not universally applied in pension systems created pursuant to Title 43 of the New Jersey Statutes. He then goes on to discuss, as he describes it, the crazy-quilt, hodge-podge of varied benefits provided to various groups of employees under the pension plans of Title 43. Plaintiff appears to be arguing that the State must grant uniform pension benefits to all employees included under state pension plans in order to conform with the requirement of equal protection. Plaintiff misunderstands the nature of the equal protection requirement. It does not require that all persons be dealt with identically or that there be logical tidiness and abstract symmetery in a statutory classification provided the classification has some "rational basis".
Next plaintiff argues that, pursuant to N.J.S.A. 43:16A-3.1 et seq. and N.J.S.A. 43:8A-1 et seq. the restrictive definition of "widow" does not apply to police officers and alcohol beverage control officers respectively, despite the fact that the work performed by these employees is in many respects similar to that being performed by county detectives. However, although these employees may to some extent perform similar duties, this is not enough to show that all their other terms, conditions and benefits of employment are so similar with those of county detectives that it would be a denial of equal protection to grant different pension benefits to these various groups of employees. *187 Again it must be emphasized that mathematical symmetry is not required and equal protection is not violated simply because a classification results in some inequality. In framing a benefits plan for public employees the Legislature must contend with various competing pressures. The practical problems involved justify the rough accommodations made in granting dissimilar benefits to varied groups of employees.
Defendant contends that the Legislature, in creating the pension plan, did not want it to become a form of life insurance or an annuity, with the benefits going to any beneficiary designated by the employee. The legislation was drawn to provide benefits for the widows of county employees. In oral argument defense counsel pointed out that in former state pension plans, where the terms "widow" and "wife" were synonymous, the State had considerable trouble with "death bed marriages" which necessitated the paying out of benefits under those pension plans for substantial periods beyond those reasonably calculated from actuarial tables. Therefore, it became necessary to restrict the definition of "widow" to protect the financial integrity of the pension systems and to prevent fraud by insuring that benefits insure only to those wives who truly qualify as bona fide widows, thereby denying benefits to bogus widows. The purpose of the definition, then, was one of legitimate legislative concern. There being no legislative history on this statute, the court accepts this analysis of the Legislature's motives in creating the restriction and the purpose and objective of it.
Initially this court will examine the different definitions of "widow" utilized by the Legislature in enacting State pension plans. There are a number of state pension plans which utilize various restrictive definitions of the class of widows who can qualify for pension benefits, apparently for the purpose of protecting the financial integrity of the pension plans and preventing fraud. For example, under N.J.S.A. 43:6A-3(p), definitions under the judicial retirement system, "widow" *188 means the woman to whom a member of a retirant was married at least four years before the date of his death and to whom he continued to be married until the date of his death. Under N.J.S.A. 43:7-9(3), definitions under the officers and employees of penal institutions retirement system, "widow" shall mean the woman to whom a member was married before the date of his retirement or at least five years before the date of his death and to whom he continued to be married until the date of his death, and who has not remarried. Under N.J.S.A. 43:15A-6(q), definitions under the state, county and municipal employees' retirement system, "widow" means the woman to whom a member was married at least five years before the date of his death and to whom he continued to be married until the date of his death, and who was receiving at least one-half of her support from the member in the 12-month period immediately preceding the member's death  the dependency of such widow will be considered terminated by her marriage subsequent to the member's death. Finally, under N.J.S.A. 43:16A-1(24), definitions under the police and firemen's retirement system, "widow" means the woman to whom a member or retirant was married at least five years before the date of his death and to whom he continued to be married until the date of his death and who has not married. While all these pension systems place only a four or five-year restriction on widows and do not place any age limitations, only N.J.S.A. 43:10-18.50 et seq., the pension system for employees of counties of 300,000 to 325,000 inhabitants, and N.J.S.A. 43:10-18.1 et seq., the pension system for employees of counties over 800,000 inhabitants, utilize the 15-year time span and 50-year-old age requirement in their definition of "widow." From this cataloging of definitions it is apparent that the Legislature has used various definitions for "widow" to prevent fraud and to insure that only those bona fide widows who require financial aid receive benefits from the pension system.
*189 It should also be noted that there are two pension systems  N.J.S.A. 43:10-19 et seq. (county detective retirement system) and N.J.S.A. 43:8A-1 et seq. (Alcohol Beverage Control Commission retirement system)  which have no definition of "widow". Using "widow" in its generic sense, these systems place no restrictions upon payment to widows.
Plaintiff contends that this hodge-podge, crazy-quilt of varied distinctions in the class of widows who can qualify for pension benefits is completely without rhyme or reason; that the classifications are established by the Legislature and distinctions made between these classes without reference to any public policy to be served thereby; that there is no legitimate legislative concern either stated or implied in the creation of this patchwork known as Title 43; and specifically, that the two isolated uses of the 15-year, 50-year-old definition of "widow" is violative of his equal protection rights. This court, however, does not agree. The State need not attack every aspect of a problem at once but may approach a problem in a different manner at different times, provided that the various measures adopted are all rational ways of dealing with the problem. All of the varied time restrictions on the class of wives who can qualify for widow's benefits are reasonable means to prevent fraud and to insure that only bona fide wives receive benefits, thereby protecting the financial integrity of the pension plans.
While the restrictive definition utilized in N.J.S.A. 43:10-18.1 and 43:10-18.50 is far broader than those used in the other statutes cited, the definition is still reasonably related towards fostering the legitimate state interests discussed above. Moreover, under the "rational basis" test, this classification will be presumed valid if there is any conceivable state of facts which would afford reasonable support for it. Therefore, the classification is constitutional in that it is reasonable to conclude that the 15 year, 50-year-old restrictions are designed to also deal more specifically *190 with the problem of older pension members entering into marriages of convenience  that is, marriages in name only  primarily for the purpose of providing for the women involved the financial security of the member's pension benefits. Although these restrictions may, in fact, eliminate from benefits some bona fide widows, this is not a sufficient grounds on which to declare the classification unconstitutional. A law need not in every aspect be logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction and that the particular legislative measure adopted was a rational way to correct it. It must be emphasized that this court is not empowered to pass judgment on the wisdom or prudence of this classification, but must leave such policy decision to the exclusive judgment of the Legislature.
Concerning N.J.S.A. 43:10-19 et seq., which has no restrictive definition of "widow," this statute was enacted in 1921, some time prior to the enactment of the other statutes cited, which do utilize restrictive definitions. This tends to support defendant's contention that the restrictions were included in later statutes to rectify the past problem of abuses under the earlier pension plans. While N.J.S.A. 43:8A-1, which also has no restrictive definition, was enacted in 1953, this pension plan is different in nature from the others cited in that it is a form of life insurance or annuity payable to any beneficiary designated by the member without limitation as to age or marital status.
Plaintiff's most persuasive argument rests on the fact that in 1943 and again in 1949 the Legislature disregarded its own classification of counties, in effect creating two special classes, one for Essex County and the other for Passaic County, and enacted state pension plans which apply to county detectives and certain other employees of only these two counties. These two state pension plans utilize the 15 years, 50-year-old restrictive definition of "widow," while apparently similarly situated county detectives in other counties are not subjected to this restriction under the *191 county pension plans. Plaintiff contends that there exists a disparity which is incomprehensible either in constitutional or logical terms, in that the other counties, which do not fall into the arbitrary numerical designations set by the Legislature, are permitted to provide benefits to widows of county detectives regardless of age or marital status, while the two counties which do fall into the numerical designation must deprive their county detectives of benefits in the event that they should marry while past the age of 50 or to women 15 years their junior.
Defendant states that in the late 1940s many retirement funds were in severe financial condition; that, in fact, plaintiff's original fund, "county detective's pension act," N.J.S.A. 43:10-19 et seq., was nearly bankrupt. Defense counsel submitted treasurer's reports and an affidavit from the director of finance for Passaic County, to the effect that the county detectives retirement fund had only $4,002.80 on or about January 1, 1949, which sum was transferred to the state pension fund for Passaic County employees at the inception of that system. The court has ascertained that in 1949 the pension fund was supporting two pensioners who were collecting a total sum of $2,750 a year in pension benefits, and that there were three active members still eligible for benefits under the plan. Defense counsel states that concern grew within the County of Passaic for the members of the fund and that it was this concern that prompted the legislation questioned in this case. The purpose of the statute was to take employees out of failing funds and put them into hopefully more secure funds. Defense counsel has submitted some evidence which indicates that a similar, although not quite as severe, set of facts existed in Essex County in 1943.
The Passaic County detectives and Essex County detectives were not similarly situated or in similar circumstances as were the county detectives in other counties. The detectives in those two counties were members of county pension plans which were near bankruptcy, while the detectives in *192 other counties were members of sound pension funds which are still in operation today. Therefore, the county detectives who are protected by the state pension plan are readily distinguishable from other county detectives protected by the county pension plan. Thus, there did, in fact, exist a marked and important characteristic which distinguished the detectives of these two counties, sufficient to make them classes by themselves. The special classifications of county detectives from these two counties, whose pension funds were financially troubled, are properly framed in that they embrace all those in like situation and circumstances, and who are, therefore, natural members of the class. In addition, the two pension plans apply equally to all the county detectives included in them. The creation of these two classes of county employees, for the purpose of enacting state pension plans exclusively applicable to them, has a real and substantial relation towards fostering the basic objective of the statute and the relevant public policy of ensuring that county governments are financially able to provide their employees and their bona fide widows with sufficient pension benefits.
Considering the presumption of constitutional validity, the heavy burden placed upon plaintiff to disprove validity, the requirement that the court grant broad latitude to the Legislature in creating classifications for social and economic legislation, and the principle that a classification is valid if there is any conceivable state of facts which would afford reasonable support for it; this court concludes that, while the evidence presented by the defendant is sketchy, plaintiff has failed to meet his burden of proof. Plaintiff has been unable to demonstrate that the difference in legislative treatment of pension benefits provided to Passaic County detectives is upon grounds wholly irrelevant to achievement of the aforementioned lawful state objectives.
Plaintiff further argues that N.J.S.A. 43:10-18.50 et seq. violates his fundamental right to marry because of its restrictive definition of the class of widows who can qualify for widow's pension benefits. In Robinson v. Cahill, *193 118 N.J. Super. 223 (Law Div. 1972), aff'd 62 N.J. 473 (1973), the court stated that where fundamental rights are asserted under the Equal Protection Clause, the classification will be closely scrutinized and the State must show that a "compelling State interest" exists for the challenged statute. San Antonio Indep. School Dist. v. Rodriques, supra; Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Harper v. Virginia Bd. of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). The right to marry is a fundamental right included in the due process concept of liberty. Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).
In Braunfeld v. Brown, 366 U.S. 599, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961), where Orthodox Jewish businessmen attacked the constitutionality of Sunday closing laws on equal protection grounds, the court stated that the statute did not make any of their religious practices unlawful, but simply regulated a secular activity which, as applied to them, operated as to make the practice of their religious beliefs more expensive, in that they had to close their stores on both Sunday and Saturday. The legislature does not make unlawful the religious practice itself but only imposes an indirect burden on the exercise of religion. When the state regulates conduct by enacting a general law within its power, the purpose and effect of which is to advance the state's secular goals, then the statute is valid despite the indirect burden on religious observance. Two Guys from Harrison  Allentown, Inc. v. Mc Ginley, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961).
By analogy this reasoning can be applied to the present case. N.J.S.A. 43:10-18.50 et seq. does not directly restrict plaintiff's right to marry but simply regulates a pension plan which, as applied to plaintiff, operates as to make his marriage to his present wife financially more burdensome. The statute only imposes an indirect economic burden on his right to marry whomever he chooses. Therefore, *194 N.J.S.A. 43:10-18.50 et seq. does not violate plaintiff's fundamental right to marry.
Finally, plaintiff argues that the transfer of Passaic County detectives from the county retirement system to the state pension plan violates his due process rights in that it denies him and his wife vested property rights without due process of law by withholding from his widow benefits she would otherwise receive under N.J.S.A. 43: 10-19 et seq. This argument is without merit. In Price v. Folsom, 168 F. Supp. 392 (D.N.J. 1958), the court stated at page 398, that
* * * pension funds and payments made therefrom are a gratuitous allowance by the particular governmental body creating and authorizing them. As a consequence, a beneficiary of such a pension fund does not acquire a vested right to any payments therefrom except those which have actually become due and owing to the beneficiary. This is so whether the payments to the fund are voluntary or compulsory. * * * [E]mployees, in making contracts of employment under which the right to participate in a pension fund accrues, do so in contemplation of the reserved right of the legislature to amend or appeal the laws on which the pension systems are founded. Therefore, the right to participate in the fund depends upon the continuance of existing laws. The government has an unqualified right to the disposition of the funds paid in by the employees and the latter never attains any rights in the funds before they become payable.
To the same effect, Rafferty v. U.S., 210 F.2d 934 (3 Cir.1954), concluded that an employee has no vested right in a retirement or pension fund, even when the contributions to such fund by him are compulsory rather than voluntary, until the occurrence of the event when the money from the fund actually becomes payable to the pensioner.
Finally, our former Supreme Court, in Laden v. Daly, 132 N.J.L. 440 (1945), concluded that a pension fund as such does not constitute a contractual or vested right between the employee and the State, and therefore it is competent for the Legislature to change, before a pension is granted, the conditions upon which it may be allowed. Spina v. *195 Consolidated Police Pension Fund Comm'n, 41 N.J. 391 (1964), and McFeely v. Hoboken Pension Comm'n, 8 N.J. Super. 575 (Law Div. 1950). Consequently, when the Legislature in 1949 altered the terms of plaintiff's pension benefits, by transferring him from the county retirement system to the state retirement plan, it was acting within its constitutional authority since, at that time, no pension benefits had already accrued to the plaintiff and his wife.
In conclusion, this court finds that (1) the provisions of N.J.S.A. 43:10-18.50 et seq. apply to plaintiff; (2) N.J.S.A. 43:10-18.50 et seq. does not violate his equal protection or due process rights; (3) N.J.S.A. 43:10-18.50 et seq. does not infringe on his fundamental right to marry; and (4) the enactment of N.J.S.A. 43: 10-18.50 et seq. does not deny him and his wife vested property rights without due process of law.